UNITED STATES of America, Appellee,

v.

Joe L. TROTTER, Appellant.

UNITED STATES of America,
Appellant,

v.

$120,612.00 IN U.S.
CURRENCY, Appellee.

UNITED STATES of America,
Appellant,

v.

Joe L. TROTTER, Appellee.

Nos. 88–2753, 89–1631 and 89–1632.

United States Court of Appeals,
Eighth Circuit.

Submitted April 10, 1990.

Decided Aug. 29, 1990.

Arthur L. Allen, Little Rock, Ark., for appellant.

Terry L. Derden, Little Rock, Ark., for appellee.

Before LAY, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL and BEAM, Circuit Judges, and BRIGHT, Senior Circuit Judge.

PER CURIAM.

Joe L. Trotter was convicted of possession with intent to distribute cocaine, conspiracy to distribute cocaine, use of a firearm during the commission of a felony, and illegal possession of a firearm. He was sentenced to twenty years[1] in prison and fined $120,000. He challenges the sufficiency and admissibility of the evidence. In addition, the government challenges the propriety of the district court's order taking Trotter's criminal fine from assets already involved in a civil forfeiture proceeding. A divided panel of this court affirmed in all respects. *United States v. Trotter,* 889 F.2d 153 (8th Cir.1989). We granted rehearing en banc, vacating the panel's opinion. We agree with the panel's conclusions regarding the issues raised by Trotter. Thus, we adopt parts I, II and III of the panel's opinion, which need not be re-

---

**1.** Trotter was sentenced under pre-guidelines law because the district court held the Sentencing Guidelines unconstitutional. *See* Findings Made During Sentencing Proceeding. The district court proceeded on a "two-track" sentencing basis and noted that the appropriate sentence under the guidelines included eight years imprisonment. The guidelines have since been held constitutional. *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Because Trotter does not challenge his sentence on appeal, we address no issues relating to this dual approach to sentencing.

peated here. However, we disagree with the panel's holding that money subject to forfeiture may be used to satisfy a criminal fine.

Trotter was stopped for traffic violations in Little Rock, Arkansas. At the time of the stop, and in a subsequent search of the car in which Trotter was riding, police officers found $120,612. A complete recitation of the facts surrounding the stop appears in the panel's opinion. *See id.* at 154–55.

In addition to the criminal action against Trotter, the government also brought separate civil forfeiture proceedings before the same court against the $120,612 found in the trunk. Before those proceedings were complete and after Trotter's conviction, the district court fined Trotter $120,000. The court ordered that Trotter's criminal fine of $120,000 be paid from the seized money. Later, the district court forfeited the remaining $612 to the government. The government cross-appeals from the district court's decision to assess the fine from the seized assets. Criminal fines are paid to the federal treasury, while a portion of forfeited assets are sometimes directed to state and local law enforcement agencies. 21 U.S.C. § 881(e)(1) (1988). Thus, the government is concerned with the intergovernmental relationships affected by the district court's action in this case.

The government argues that once civil forfeiture is commenced, no part of what is seized may be used to pay other debts. The government reasons that, first, the civil forfeiture action is a separate action taken against the property, *in rem*, and not the person. *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). Second, title of the object *in rem* vests in the United States from the time of the illegal act. Once forfeiture is completed, title relates back to the time of the commission of the illegal act defeating subsequent transfers. 21 U.S.C. § 881(h). Third, a criminal fine becomes a lien against property owned by the defendant. 18 U.S.C. § 3613(a) (1988). Fourth, the district court thus lacked the power to attach the funds *in rem* because Trotter did not hold title to the money,

which was later forfeited, at the time of the district court order. As a result, the money should be forfeited. We agree with at least some of the government's contentions.

In a forfeiture proceeding, the property becomes the named defendant. In proceedings brought under section 881, the property is placed in the custody of the Attorney General and under the jurisdiction of, and subject to the orders of, the district court. Section 881(c) provides: "Property taken or detained under this section shall not be repleviable, but shall be deemed to be in the custody of the Attorney General, subject only to the orders and decrees of the court or the official having jurisdiction thereof." 21 U.S.C. § 881(c).

To obtain civil forfeiture, the government must initially show that there is probable cause to believe that the object was used in criminal activity. The burden then shifts to the citizen to show by a preponderance of the evidence that the property should not be subject to forfeiture. *One Blue 1977 AMC Jeep CJ–5 v. United States,* 783 F.2d 759, 761 (8th Cir.1986). Once forfeiture is declared, the government's title relates back in time to the commission of the criminal act. "All right, title and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act·giving rise to forfeiture under this section." 21 U.S.C. § 881(h).

We had previously interpreted section 881 as a permissive forfeiture statute to which the relation-back doctrine did not apply. *United States v. $13,000 in United States Currency,* 733 F.2d 581, 584 (8th Cir.1984). Congress became concerned that defendants could defeat forfeiture under section 881 by transferring assets prior to the completion of forfeiture proceedings. Congress added section 881(h) in 1984 to nullify transfers made by the original owner while the forfeiture action was pending.

The interest of the United States in the property is to vest at that time, and is not necessarily extinguished simply because the defendant subsequently transfers his interest to another. Absent ap-

plication of this principle a defendant could attempt to avoid criminal forfeiture by transferring his property to another person prior to conviction.

The purpose of this provision is to permit the voiding of certain pre-conviction transfers and so close a potential loophole in current law whereby the criminal forfeiture sanction could be avoided by transfers that were not "arms' length" transactions.

S.Rep. No. 225, 98th Cong., 2d Sess. 200–01, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3383–84 (footnote omitted).

When large sums of money are found, typically various individuals and agencies ask the court for a share, creating confusion. *See United States v. $5,644,540 in United States Currency,* 799 F.2d 1357 (9th Cir.1986) (private claimants, state tax board, federal government). Even if confusion may otherwise exist, we think that the 1984 Act's codification of the relation-back doctrine answers the question before us today. The statute makes clear that transfers by the former owner are invalid, and that title vests "in the United States."[2] Thus, this transfer by the owner to pay his criminal fine, accomplished through the good offices of the district judge, was improper.

The Supreme Court, in *United States v. Monsanto,* — U.S. —, 109 S.Ct. 2657, 2665, 105 L.Ed.2d 512 (1989), analyzed the title interests in assets subject to forfeiture. Mr. Justice White, writing for the Court, makes the point:

[The forfeiture statute] states that "[a]ll right, title, and interest in [forfeitable] property ... vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c) (1982 ed., Supp. V). Permitting a defendant to use assets for his private purposes that, under this provision, will become the property of the United States if a conviction occurs, cannot be sanctioned.

Mr. Justice White discusses the legal principles underlying this conclusion in *Caplin & Drysdale, Chartered v. United States,* — U.S. —, 109 S.Ct. 2646, 2653–54, 105 L.Ed.2d 528 (1989).

The misuse of assets in this case is even more certain than the proposed use in *Monsanto* and *Caplin & Drysdale.* Applying the statutory relation-back doctrine, it is clear that the seized assets belonged to the United States at the time the criminal penalty was imposed. The criminal conviction had already occurred. A district court has no power to expend the funds of the United States without statutory authority. We find no authority (nor has such authority been brought to our attention) that extends discretion to a district judge to direct the payment of a fine imposed upon a criminal defendant with monies of the United States.

Thus, the attempted satisfaction of the $120,000 fine with the seized assets was improper. Accordingly, we reverse the district court in this regard and remand with directions that judgment be entered in favor of the United States in the forfeiture proceeding for the full amount seized.[3]

BRIGHT, Senior Circuit Judge, concurring specially.

I concur specially.

Although I joined Judge Heaney's initial opinion for the panel, on reconsideration and in light of the Government's acknowledgment set forth in footnote 3 of the en

---

**2.** Since title vests "in the United States," other creditors, including state agencies, may not claim any part of the funds if the government successfully obtains forfeiture. *Eggleston v. Colorado,* 873 F.2d 242, 248 (10th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990); *see Caplin & Drysdale, Chartered v. United States,* — U.S. —, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) (cannot use funds to pay attorneys).

**3.** The government acknowledged at oral argument that the $120,000 fine imposed by the

district judge in the criminal proceeding is valid only if collectible through the use of the seized assets. Thus, the government conceded, in essence, that should we find that such funds are unavailable to satisfy this part of the sentence, the fine is a nullity as a matter of law. We agree with this analysis of the judgment entered by the district court. In effect, then, our holding in this case sets aside the $120,000 fine imposed as part of the sentence.

banc opinion, I concur in the opinion by the full court.

The United States, under the panel opinion, would receive all of the $120,000.00 here in question. The Government's position on this appeal, as sustained, will serve to share these funds with state and local law enforcement agencies under 21 U.S.C. § 881(e)(1). The sentence obligations of the defendant, however, will not change.