**UNITED STATES of America,**

v.

**Michael MURRAY, Defendant.**

**United States Marshals Service, Garnishee,**

**Daniel J. O'Connell, III, Esq., Lienholder.**

**Criminal No. 91–10305–WGY.**

United States District Court, D. Massachusetts.

March 14, 1997.

54

George W. Vien, U.S. Attorney's Office, OCDETF Division, Criminal, Boston, for United States.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

On November 6, 1991, Michael Murray ("Murray") was arrested in McAllen, Texas, on federal drug charges. Federal agents seized $5,000 from Murray's hotel room and $3,060 from his person upon his arrest. Murray was returned to Massachusetts to face trial. Upon his conviction, this Court, on April 25, 1994, imposed a $10,000,000 fine on Murray.

On October 17, 1995, the United States brought a civil forfeiture action pursuant to 21 U.S.C. § 881(a)(6) against the seized currency. *United States v. One Lot of $5,000.00 in United States Currency, and One Lot of $3,060.00 in United States Currency,* Civil Action No. 95–12344–EFH (D.Mass. Oct. 17, 1995). Murray claimed legal ownership of the seized money and, through his counsel, Daniel J. O'Connell, III, Esq. ("Mr. O'Connell"), subsequently settled with the government, agreeing to divide the seized funds in half. Accordingly, on September 4, 1996, Judge Harrington issued a final judgment and order in the civil forfeiture action, directing Murray to forfeit $4,030 and requiring the government to return the remaining $4,030 to Murray. It appears that Murray—now in prison—has not demanded payment of his share of the seized currency. Thus, the United States Marshals Service has retained possession of $4,332, reflecting Murray's share of the currency plus bond costs.

Seeking to satisfy a portion of the $10,000,000 criminal fine imposed by this Court, the government has now served a writ of garnishment pursuant to the Federal Debt Collections Procedures Act of 1990 (the "Federal Debt Act"), 28 U.S.C. § 3205(b)(1), upon the $4,332 held by the Marshals Office. Murray objects to the government's garnishment and offers two grounds in support of quashing the writ. First, Murray argues that the parties have fully litigated the issue of the relative rights to the $4,332, as evidenced by the final judgment in the civil forfeiture action requiring the government to return the money to Murray. Thus, Murray concludes, the doctrine of *res judicata* forbids relitigation of this claim under the guise of a garnishment proceeding. Second, Murray

asserts that the $4,332 held by the Marshals Service should properly be applied toward his attorney's fees. In essence, Murray argues that his lawyer's claim to the currency, in the form of a valid attorney's lien, has priority over the United States' claim to the funds. The Court addresses each claim seriatim.

## I. Analysis

### A. *Res Judicata*

■ Murray claims that *res judicata*, or more precisely claim preclusion, prohibits the government's garnishment of the proceeds held by the Marshals Office. Murray, as a party seeking to invoke claim preclusion, must establish: "(1) a final judgment on the merits in an earlier action, (2) sufficient identity between the causes of action asserted in the earlier and later suits, and (3) sufficient identity between the parties in the two suits." *Porn v. National Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir.1996).

■ The dispositive issue with respect to Murray's argument is the identity *vel non* as between the two causes of action. Murray characterizes the civil forfeiture action and the government's present garnishment proceeding as the "same" claim. In reality, however, these two actions are quite different. The garnishment action is an attempt to enforce a criminal judgment. A criminal proceeding, or an attempt to enforce a criminal judgment, seeks to punish the defendant for his wrongdoing. In contrast, a judgment in a civil forfeiture action is remedial in nature. *United States v. Ursery,* —— U.S. ——, ——, 116 S.Ct. 2135, 2142, 135 L.Ed.2d 549 (1996). Thus, the two actions serve different societal interests. Accordingly, there is not "sufficient identity" between these two causes of action for purposes of claim preclusion. *See Porn,* 93 F.3d at 34; *United States v. Brekke,* 97 F.3d 1043, 1047–48 (8th Cir. 1996) (holding that criminal proceeding was different from previous civil forfeiture action

for *res judicata* purposes). This Court therefore concludes that claim preclusion does not bar the United States from its present garnishment action against the sum of $4,332 held by the Marshals Service.

### B. *Priority of Attorney's Lien*

Murray also asserts that his counsel, Mr. O'Connell, possesses a valid interest in the $4,332 in satisfaction of unpaid attorney's fees, and that, under the applicable statutory scheme, the attorney's lien takes priority over the government's garnishment claim. This Court must therefore determine both the validity of the competing interests in the $4,332, and the relative priority of the parties to the funds.

Under 18 U.S.C. § 3613(a),

A fine . . . is a lien in favor of the United States upon all property belonging to the person fined. The lien arises at the time of the entry of the judgment and continues until the liability is satisfied, remitted, or set aside . . .

18 U.S.C. § 3613(a). The statute treats a criminal fine as a federal tax assessment and utilizes the statutory priority scheme of the Internal Revenue Code to establish the priority of competing creditors. 18 U.S.C. § 3613(c).[1]

■ Thus, in order to determine who has priority in the $4,332 at issue, this Court looks to the Internal Revenue Code creditor priority scheme—26 U.S.C. § 6323. Section 6323 of the Internal Revenue Code provides, in relevant part:

(b) **Protection for certain interest even though notice filed.**—Even though notice of a lien imposed by section 6321 [*i.e.,* a federal tax lien] has been filed, such lien shall not be valid—

(8) **Attorney's liens.**—With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a

---

1. 18 U.S.C. § 3613(c) provides in relevant part: **Application of other lien provisions.**—The provisions of sections 6323 . . . [and other sections] of the Internal Revenue Code of 1954 . . . apply to a fine and to the lien imposed by subsection (a) as if the liability of the person fined were for an internal revenue tax assess-

ment. . . . For the purposes of this subsection, references in the preceding sections of the Internal Revenue Code of 1954 to the "Secretary" shall be construed to mean "the Attorney General," and references in those sections to "tax" shall be construed to mean "fine."

lien upon or a contract enforceable against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, except that this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States.

26 U.S.C. § 6323(b)(8).

Section 6323(b)(8), by its terms, grants superpriority to attorney's liens which satisfy the enumerated requirements. The one exception to this superpriority provision arises when the attorney's lien is asserted against a "judgment or amount in settlement of a claim or of a cause of action against the United States." *Id.* In this case, therefore, the question is whether or not the judgment in favor of both the government and Murray in the civil forfeiture action is "against" the United States for purposes of section 6323(b)(8). This is an issue of first impression in this circuit.

■ The United States commenced the civil forfeiture action against $8,060 in seized currency. The seized currency was not then the legal property of the government. *See United States v. $319,820.00 in United States Currency,* 634 F.Supp. 700, 703–04 & n. 5 (N.D.Ga.1986) (stating that seized currency in civil forfeiture proceeding was not property of United States prior to judgment). Thus, the civil forfeiture judgment, which ordered the government to remit $4,030 to Murray, did not require the United States to remove any money from its coffers. The money belonged to Murray all along. Accordingly, this Court holds that the civil for-

feiture judgment in this case was not "against" the United States, and thus, the exception to 26 U.S.C. § 6323(b)(8) is inapplicable.[2]

■ This Court must next analyze whether Mr. O'Connell's alleged lien can benefit from superpriority status. This Court adopts the three part test utilized by Judge Zobel in *Markham v. Fay,* Civil Action No. 91–10821–Z, 1993 WL 160604, at *6 (D.Mass. May 5, 1993), to determine whether an attorney's lien can benefit from the "superpriority" provision of 26 U.S.C. § 6323(b)(8). In order to recover, Mr. O'Connell must demonstrate "(1) that a fund was created out of a judgment or settlement of a claim; (2) that local law would recognize the existence of a lien; and (3) that the amount of the lien reflects the extent to which [the attorney's] efforts 'reasonably contributed to the award.'" *Id.* (internal citations omitted).

■ With respect to the first element, the Court must determine whether the disputed funds were created out of a judgment or settlement procured by Mr. O'Connell on behalf of Murray. In the civil forfeiture action, Mr. O'Connell negotiated a settlement which resulted in a judgment requiring Murray to forfeit only one-half (*i.e.,* $4,030) of the seized currency and entitling him to the remaining one-half. Thus, Mr. O'Connell obtained a favorable judgment for his client in the civil forfeiture action as required by the attorney's lien "superpriority" provision of 26 U.S.C. § 6323(b)(8). This Court rules, therefore, that the $4,332 was in fact "created out of a judgment or settlement of a claim." *Markham,* 1993 WL 160604, at *6.

■ This Court must next determine whether local law would recognize Murray's

---

2. This conclusion is consistent with the policy of the Federal Tax Lien Act ("Tax Lien Act") which added 26 U.S.C. § 6323(b)(8) to the Internal Revenue Code. The Tax Lien Act seeks to assist the government in its tax collection efforts. *Hill, Christopher & Phillips, P.C. v. United States Postal Serv.,* 535 F.Supp. 804, 809 (D.D.C.1982). This exception to the superpriority provision prevents an attorney from taking "money out of one of the Government's pockets so it can be put back in another." *Id.* As Mr. O'Connell's settlement efforts merely enabled Murray to retain his own seized money and did not operate to take the government's funds, this Court's interpretation of section 6323(b)(8) comports with the statute's goal of encouraging attorneys to obtain judgments that will render their clients better able to pay their taxes and outstanding liabilities.

While a district court in the Northern District of Georgia held in *United States v. $319,820.00 in United States Currency,* 634 F.Supp. 700, 703–04 (N.D.Ga.1986), that a judgment in a civil forfeiture action was "against" the United States for purposes of 26 U.S.C. § 6323(b)(8), this Court respectfully declines to follow its reasoning.

attorney's lien. Massachusetts law grants attorneys a statutory right to assert a lien in order to secure reasonable compensation for their legal services. Mass. Gen. L. ch. 221, § 50. The Massachusetts attorney's lien statute provides in relevant part that "[f]rom the authorized commencement of an action, counterclaim or other proceeding in any court ... the attorney who appears for a client ... shall have a lien for his reasonable fees and expenses." *Id.* In order to hold a valid lien, however, an attorney must establish "a substantive contractual or quantum meruit basis to recover fees from the client as a predicate to filing a lien." *Boswell v. Zephur Lines, Inc.*, 414 Mass. 241, 249, 606 N.E.2d 1336 (1993). In this case, Murray retained Mr. O'Connell to represent him in the civil forfeiture action where he secured a favorable settlement. There appears to be no dispute that Murray still owes his attorney more than $4,332 in fees for legal work performed on his behalf. Under Massachusetts law, therefore, Mr. O'Connell is entitled to assert a valid attorney's lien on his client's currency now held by the Marshals Service. *See id.*

The third and final element in determining whether Mr. O'Connell is entitled to "superpriority" requires this Court to determine if the amount of Mr. O'Connell's lien reflects the extent to which his efforts "reasonably contributed to the award." *Markham*, 1993 WL 160604, at *6. In other words, is $4,332 reasonable compensation for Mr. O'Connell's fees and expenses in representing Murray in the civil forfeiture action?

Where a statute grants the right to recover a "reasonable" fee, the reasonableness of the attorney's fee is a question of law. *Id.* at *8. This Court may consider factors such as "the experience and reputation of the attorney, the amount of time spent, the rates charged by attorneys providing similar services in the area, and the result obtained." *Id.* (citing *Salvini v. Flushing Supplies Corp.*, 137 F.R.D. 190, 193–94 (D. Mass.1991); S.J.C. Rule 3:07; DR 2–106[B] ). Mr. O'Connell appears to have expended time and expense negotiating with the government and securing a favorable settlement and judgment. Further, the Court notes that Mr. O'Connell filed an answer, a claimant's affidavit of legal ownership, a cross motion for summary judgment, and a twelve page opposition to the government's summary judgment motion. The issues presented in this legal memorandum dealt with complex constitutional questions. Accordingly, this Court concludes that the sum of $4,332 is reasonable compensation for Mr. O'Connell's fees and expenses in representing Murray in the civil forfeiture action and securing a settlement in his favor.[3]

This Court therefore holds that Mr. O'Connell's attorney's lien in the disputed $4,332 takes priority over the United States' lien.

## II. Conclusion

Murray's objection to the United States' writ of garnishment is **ALLOWED**. The United States Marshals Service is hereby ordered to remit the $4,332 presently in its possession to Daniel J. O'Connell, III, Esq.

SO ORDERED.

---

**3.** This Court's holding that Mr. O'Connell's lien is entitled to "superpriority" under 26 U.S.C. § 6323(b)(8) is further supported by the Eighth Circuit's decision in *Nebraska v. Richter*, 764 F.2d 517 (8th Cir.1985). In *Richter*, local authorities seized $13,240 from the defendant during an investigation into narcotics trafficking. *Id.* at 518. Richter's attorney achieved a successful resolution for his client in the criminal matter. Following the conclusion of the case, the attorney and the IRS asserted competing claims to the seized money. *Id.* Reasoning that the factual record supported the attorney's claim that his services were necessary to obtaining a release of his client's seized funds, the Eighth Circuit held that the attorney's lien upon the seized currency was entitled to "superpriority" under 26 U.S.C. § 6323(b)(8). *Id.* at 519. This case is indistinguishable from *Richter*.